UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HOME HEALTH LICENSING SPECIALISTS INC., et al., | § § § | |
| Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. 3:07-CV-2150-B |
| | § | |
| MICHAEL O. LEAVITT, et al., | § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION

This is a civil action against a federal contractor and several federal employees, in their individual capacities, alleging violations of Plaintiffs' constitutional rights and the Sherman Act arising from a delay in processing their applications for enrollment as Medicare providers. Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants Michael Leavitt, the Secretary of the United States Department of Health and Human Services, Kerry Weems, Acting Administrator for the Centers for Medicare & Medicaid Services ("CMS"), James Randolph Farris, Consortium Administrator for Quality Improvement and Survey & Certification Operations at CMS, Bruce W. Hughes, President, Palmetto GBA, L.L.C. and Palmetto GBA, L.L.C. ("Palmetto") (collectively "Defendants") move to dismiss all counts of the Complaint, arguing principally that Plaintiffs' suit is untimely due to their failure to exhaust their administrative remedies and Plaintiffs' *Bivens* claim is unavailable as a matter of law. Having considered Defendants' Motion to Dismiss (doc #23), Plaintiffs' Response, Defendants' Reply and all arguments in support and opposition, the Court finds the Motion meritorious and therefore GRANTS it as set forth below.

BACKGROUND

Plaintiff Home Health Specialists ("Home Health") is in the business of developing "turn-key" home health agencies for customers who want to purchase operational facilities without personally going through the bureaucratic process associated with opening such a facility. (Compl. ¶ 1).[1] As part of developing a new agency, Home Health applies for and obtains the necessary state licenses, enrolls the agency as a Medicare provider, and starts treating patients. (Compl. ¶¶ 1, 5). The other named Plaintiffs are all agencies for which Home Health applied for enrollment as Medicare providers from August 2006 through January 2007 and whom Home Health intended to sell upon approval. (Compl. ¶¶ 24-69, 98-99). In June 2007, Plaintiffs were informally advised that they would not be permitted enrollment in Medicare, because their ownership was intended to be transferred after their approval. (Compl. ¶¶ 25, 27, 29, 31, 33, 35, 37, 39, 41, 43, 45, 47, 49, 51, 53, 55, 57, 59, 61, 63, 65, 67, 69, 70). In June 2008, Plaintiffs were formally notified of the denial of their applications (Pls.' Resp. to Mot. to Dismiss at n. 2).

The Centers for Medicare & Medicaid Services ("CMS") is the governmental sub-agency responsible for administering the Medicare program. (Compl. ¶ 5). CMS is a part of the Department of Health and Human Services ("HHS"). Defendant Palmetto is a contractor for CMS that processes the applications for enrollment for providers in the Medicare Program. (Compl. ¶ 7). Certain guidelines exist for processing the Medicare provider applications, as set forth in the Medicare Program Integrity Manual. (Compl. ¶¶ 17-19). The guidelines include processing time frames, which state that the enrollment should be processed within 45 days of receipt, and the

---

[1]The Complaint referred to herein is the First Amended Complaint f6iled on March 6, 2008.

associated requirement that the contractor provide enough staff to meet those processing time frames. (Compl. ¶¶ 18-19). If Palmetto does not approve an application, it is supposed to send the application on to CMS for the issuance of a denial decision letter. (Compl. ¶ 20). Once enrollment has been denied, the applicant can appeal that denial pursuant to 42 C.F.R. § 424.545(a). (Compl. ¶ 20). The administrative process for an appeal is contained in 42 C.F.R. § 498. [2]

On December 26, 2007, Plaintiffs filed their Original Complaint in this matter (doc #1), which they amended on March 6, 2008 (doc #8). Plaintiffs' essential complaint is that Palmetto refused and failed to evaluate their applications for enrollment in the Medicare program in a timely manner, effectively deciding *de facto* to deny the applications while denying Plaintiffs their right to appeal such a denial. (Compl. ¶¶ 70-72, 77-78, 82). Plaintiffs allege that this failure constitutes a violation of their constitutional due process rights,[3] is an unconstitutional taking, violates 42 C.F.R. § 424.545, and is a Sherman Act antitrust violation as an illegal restraint of trade. (Compl. ¶¶ 80-95). Plaintiffs assert each claim as to all of the Defendants, of which Palmetto is the only entity. The remaining four Defendants, being sued in their individual capacities, are the (1) Secretary of the Department of Health and Human Services, (2) National Administrator of CMS, (3) Dallas Regional Administrator of CMS, and (4) President of Palmetto. (Compl. ¶¶ 4-7).

Defendants moved to dismiss all claims in the Complaint asserting that the Court lacks subject matter jurisdiction, because Plaintiffs' claims arise under the Medicare Act and are barred

---

[2] 42 C.F.R. § 424.5454(a) provides that "General. A prospective provider...that is denied enrollment in the Medicare program...may appeal CMS' decision in accordance with part 498, subpart A of this chapter."

[3] In addition to a traditional due process violation claim, Plaintiffs also assert a constitutional claim under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

until they exhaust their administrative appeals thereunder, which they indisputably have not. Defendants also urge that *Bivens* does not support jurisdiction in this case or that Plaintiffs cannot state a claim under *Bivens* given the existing extensive statutory scheme for Medicare administration. Defendants further assert that the Court lacks jurisdiction, because they are all immune from suit under each of Plaintiffs' theories.

**ANALYSIS**

A complaint must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). A federal court has subject matter jurisdiction over civil actions involving a federal question or diversity of citizenship. 28 U.S.C. § 1331-1332. The burden of proof on a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *See Strain v. Harrelson Rubber Co.*, 742 F.2d 888, 889 (5th Cir. 1984).

The Fifth Circuit recognizes a distinction between a "facial" attack to subject matter jurisdiction, which is based solely on the pleadings, and a "factual" attack to jurisdiction, which is based on affidavits, testimony, and other evidentiary material. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). Where, as here, a defendant files a Rule 12(b)(1) motion to dismiss based solely on the pleadings, the motion is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992); *see also Johnson v. Hous. Auth. of Jefferson Parish*, 442 F.3d 356, 359 (5th Cir. 2006).

A 12(b)(6) motion to dismiss should be granted only if it does not include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007). In analyzing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for

failure to state a claim, the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). The Court's review is limited to the allegations in the complaint and to those documents attached to a motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

Jurisdiction over Counts One and Two

In Count One of the Complaint, Plaintiffs allege that Defendants violated their constitutional due process rights under the Fifth and Fourteenth Amendments as well as 42 C.F.R. §424.545 by not providing them a fair administrative appeal process for the de facto denial of Plaintiffs' applications for enrollment as Medicare providers. Similarly, Count Two of the Complaint alleges simply that Defendants violated 42 C.F.R. §424.545 in failing to timely process Plaintiffs' Medicare provider applications. Defendants argue that the Court has no jurisdiction over these claims, because they arise under the Medicare Act and Plaintiffs have not exhausted their administrative remedies under that Act. The Court agrees.

Section 405(h) of Title 42 of the United States Code provides that:

> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

Although this section of the Code addresses the Social Security Act, the Supreme Court has held

that "[Title 42 U.S.C.] [s]ection 1395ii makes section 405(h) applicable to the Medicare Act to the same extent it applies to the Social Security Act." *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 9 (2000). As the Court has noted, "on its face, [the third sentence of section 405(h)] bars district court federal question jurisdiction." *Weinberger v. Salfi*, 422 U.S. 749, 756 (1975). "Thus, to be true to the language of the statute, the inquiry in determining whether 405(h) bars federal question jurisdiction must be whether the claim 'arises under' the Act." *Heckler v. Ringer*, 466 U.S. 602, 615 (1984).

The phrase "arises under" is interpreted broadly by the courts. As the Supreme Court discussed in *Salfi*, although the plaintiff's "constitutional arguments are critical to their complaint…it is…fruitless to argue that this action does not also arise under the Social Security Act. For not only is it Social Security benefits which appellees seek to recover, but it is the Social Security Act which provides both the standing and the substantive basis for the presentation of their constitutional contentions." *Salfi*, 422 U.S. at 760-761. The Court thus found that section 405(h) "precludes resort to federal question jurisdiction for the adjudication of appellees' constitutional contentions." *Id.* at 761.

In *Heckler*, the Court further explained the principles announced in *Salfi* in finding that section 405(h) barred federal question jurisdiction over a constitutional challenge to a policy of the Secretary under the Medicare Act. *Heckler*, 466 U.S. at 615. The Court noted that "it is of no importance that respondents here…sought only declaratory and injunctive relief and not an actual award of benefits as well." *See also Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282 (5th Cir. 1999) (provider's constitutional claims "arose under" the Medicare Act). Section 405(h) "demands the 'channeling' of virtually all legal attacks through the agency." *Illinois Council*, 529 U.S.

at 13. The channeling required by section 405(h) is not limited based on distinctions in the nature of the claim stated or relief sought. *Id.* at 14. As the Supreme Court observed:

> [W]e cannot distinguish *Salfi* and *Ringer* from the case before us. Those cases themselves foreclose distinctions based upon the "potential future" versus the "actual present" nature of the claim, the "general legal" versus the "fact-specific" nature of the challenge, the "collateral" versus "noncollateral" nature of the issues, or the "declaratory" versus "injunctive" nature of the relief sought. Nor can we accept a distinction that limits the scope of § 405(h) to claims for monetary benefits. Claims for money, claims for other benefits, claims of program eligibility, and claims that contest a sanction or remedy may all similarly rest upon individual fact-related circumstances, may all similarly dispute agency policy determinations, or may all similarly involve the application, interpretation, or constitutionality of interrelated regulations or statutory provisions. There is no reason to distinguish among them in terms of the language or in terms of the purposes of § 405(h). Section 1395ii's blanket incorporation of that provision into the Medicare Act as a whole certainly contains no such distinction. Nor for similar reasons can we here limit those provisions to claims that involve "amounts."

*Id.* As an initial matter, it is entirely unclear whether Plaintiffs even dispute that their claims arise under the Medicare Act. *See* Pls.' Resp. at 6-10. Regardless of the lack of clarity of Plaintiffs' position, although Plaintiffs have characterized Count One of the Complaint as a constitutional claim, the Court finds that it arises under the Medicare Act as it explicitly hinges on alleged violations of regulations and guidance related to the processing of certain Medicare provider applications. Count Two of the Complaint even more explicitly arises under the Medicare Act, as that claim is based solely on an alleged violation of a Medicare regulation. Thus, section 405(h) clearly applies such that this Court has no federal question jurisdiction under 28 U.S.C. § 1331 to hear this matter.

"[S]ection 405(g), to the exclusion of 28 U.S.C. § 1331, is the sole avenue for judicial review

for all claims arising under the Medicare Act." *Heckler*, 466 U.S. at 614-615. "Judicial review of claims arising under the Medicare Act is available only after the Secretary renders a 'final decision' on the claim, in the same manner as provided in 42 U.S.C. § 405(g) [regarding social security claims]." *Id.* at 605. A "final decision" is achieved only after a claimant exhausts the entire administrative process set forth by the Secretary in 42 C.F.R. § 498. *Id.* at 606 (stating that a "final decision is rendered on a Medicare claim only after the individual claimant has pressed his claim through all designated levels of administrative review"); *cf. Salfi*, 422 U.S. at 766 (noting that the Secretary has authority to "flesh out" the meaning of the term "final decision" by regulation).

This administrative process requires an application for reconsideration of CMS' initial determination (42 C.F.R. § 498.5(a), 498.22), CMS' consideration of the request for reconsideration including the evaluation of written evidence and statements submitted by the rejected prospective provider (42 C.F.R. § 498.24), the rejected provider then filing a request for a hearing before an Administrative Law Judge (42 C.F.R. § 498.40), an oral hearing being conducted or the provider waiving a right to such a hearing (42 C.F.R. § 498.66), the provider requesting review of the ALJ decision by the Departmental Appeals Board (42 C.F.R. § 498.74), the Appeals Board conducting the review and issuing a decision (42 C.F.R. § 498.89), and the provider appealing to district court (42 C.F.R. § 498.95, 498.5). There are no allegations in the Complaint that any of these steps have occurred. Based on Plaintiffs' representation in their Response Brief, the only step that has arguably occurred now is CMS' initial determination rejecting the applications, which occurred after the filing of the Amended Complaint in this matter. Pls.' Resp. Br. at 9. Thus, clearly the Secretary has not reached a final decision on any of Plaintiffs' applications for enrollment as Medicare providers and Plaintiffs have not exhausted their administrative appeals therefrom. The Court lacks jurisdiction

over Plaintiffs' claims until they satisfy the administrative exhaustion requirement of section 405(g).

However, Plaintiffs appear to argue that they do not need to satisfy section 405(g), because the crux of their Complaint is that the Secretary, through Palmetto and CMS, refused to render any decision for about two years, effectively denying the applications with no ability for Plaintiffs to appeal. Pls.' Resp. Br. at 6-10. This argument is not well-taken for several reasons. First, Plaintiffs have represented that they have now received initial determinations from CMS, which are eligible for administrative appeal. *Id*. at 9. Plaintiffs offer no reason why they cannot now pursue an appeal in accordance with 42 C.F.R. §§ 424.545 and 498.

Second, Plaintiffs state that an appeal hearing now would be meaningless, because their loss cannot be redressed through an administrative appeal. Plaintiffs miss the mark with this statement. In *Illinois Council*, the Supreme Court rejected a similar argument that the plaintiff should be able to avoid the channeling requirements of section 405(g), because the agency lacked power to decide the plaintiff's constitutional claim. *Illinois Council*, 529 U.S. at 23-24. The Court noted that:

> The fact that the agency might not provide a hearing for that particular contention, or may lack the power to provide one, is beside the point because it is the "action" arising under the Medicare Act that must be channeled through the agency. After the action has been so channeled, the court will consider the contention when it later reviews the action. And a court reviewing an agency determination under § 405(g) has adequate authority to resolve any statutory or constitutional contention that the agency does not, or cannot, decide, including, where necessary, the authority to develop an evidentiary record.

(Internal citations omitted). *Id.* Plaintiffs have presented no argument or authority to explain why the federal district court could not resolve their allegation that the delay in processing their applications is a constitutional and regulatory violation *after* Plaintiffs exhaust their administrative

appeals of the denial of their Medicare provider enrollment applications. Indeed, as Plaintiffs point out, they have already gone out of business and thus, this is purely a damages case appropriate for resolution by a federal court. Pls.' Resp. Br. at 9.

Third, to the extent that Plaintiffs rely on an exception to the rule of sections 405(g) and 405(h) embodied in the *Michigan Academy* case, this is not a circumstance in which channeling review through CMS and HHS would effectively mean no review. In *Bowen v. Michigan Acad. of Family Physicians*, 476 U.S. 667 (1986), the Supreme Court enunciated an exception to the administrative exhaustion rule of sections 405(g) and 405(h) wherein it allowed district court jurisdiction under 28 U.S.C. § 1331 over a challenge to the lawfulness of HHS regulations concerning Medicare Part B because the regulations themselves provided for only limited challenges to decisions under that Part. *Id.* at 674-678. The Supreme Court found that because the statute precluded plaintiff from challenging the decision under section 405(g) and there was no expression by Congress not to allow challenges in other forms, federal question jurisdiction was available. *Id.* In *Illinois Council*, the Court further explained that the best interpretation of the *Michigan Academy* holding is that where channeling review through 405(g) would effectively completely preclude review, rather than postpone it, the court may exercise federal question jurisdiction. *Illinois Council*, 529 U.S. at 19-20. Here, Plaintiffs essentially argue that their due process rights have already been violated by Palmetto and CMS' failure to timely review their Medicare provider applications. Thus, the alleged damage to Plaintiffs has already occurred. Plaintiffs have presented no argument to support the idea that requiring them to channel review through section 405(g) would do anything other than further postpone district court review–not preclude it–particularly considering that the alleged damage is already done.

> In the best of all worlds, immediate judicial access for all of these parties might be desirable. But Congress, in § 405(g) and § 405(h), struck a different balance, refusing declaratory relief and requiring that administrative remedies be exhausted before judicial review of the Secretary's decisions takes place. Congress must have felt that cases of individual hardship resulting from delays in the administrative process had to be balanced against the potential for overly casual or premature judicial intervention in an administrative system that processes literally millions of claims every year.

*Heckler*, 466 U.S. at 627; see also *Janacek v. Leavitt*, 3:07-CV-1996-G, 2008 WL 4107549, at * 10 (N.D. Tex. Aug. 27, 2008) (rejecting Michigan Academy exception); *Griego v. Leavitt*, No. 3:07-CV-1808-D, 2008 WL 2200052, at **7-8 (N.D. Tex. May 16, 2008) (same). The *Michigan Academy* exception is not available for Plaintiffs under these circumstances, and thus they must exhaust their administrative remedies before any court can assert jurisdiction over Counts One or Two of their Complaint.[4]

<u>Viability of Count Three</u>

Plaintiffs' *Bivens* claim is a claim for damages against the four individual defendants in their individual capacities.[5] In *Bivens*, the plaintiff brought claims in federal court alleging Fourth

---

[4] It is incumbent upon the Court to determine whether it has jurisdiction prior to assessing whether any particular claim is available on the merits. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). This decision should not be read to imply that the Court finds that either Counts One or Two state a valid cause of action, as that issue was not reached. Further, it appears to the Court that Count One may be substantively identical to Count Three, as it alleges the same constitutional violations which are the subject of the CountThree *Bivens* claim. That issue is also not reached based on the Court's finding of lack of jurisdiction over Count One.

[5] Although Plaintiffs' Complaint is less than clear, the Court does not read Count Three as an action against the corporate defendant Palmetto GBA, LLC. There is no *Bivens* "right of action for damages against private entities acting under color of federal law." *Correctional Servs. Corp., v. Malesko*, 534 U.S. 61, 62 (2001). The *Bivens* case has never been extended to apply to entities, as opposed to individuals. *Id.* If Plaintiffs do intend a *Bivens* claim against Palmetto, the Court finds such a claim unavailable as a matter of law in light of *Malesko*.

Amendment violations by the defendant federal agents who allegedly affected a search and arrest without a warrant and humiliated the plaintiff in the course of doing so. *Bivens*, 403 U.S. at 389-90. The Supreme Court held that although there was no statutory basis for plaintiff's claims, the allegation of a Fourth Amendment violation by federal agents stated a claim for money damages cognizable in federal court as a federal question. *Id.* at 397. In so holding, the Court found "no special factors counseling hesitation in the absence of affirmative action [to create a cause of action] by Congress." *Id.* at 396.

Defendants argue that Count Three fails to state a claim upon which relief can be granted, because a *Bivens* remedy is unavailable in light of the remedial scheme of the Medicare Act. Plaintiffs counter that their *Bivens* claim against the federal employees in their individual capacities is actually the only remedy available to them, because they have not been afforded appeal rights required by the Medicare Act.[6] Pls.' Resp. Br. at 10. The Court finds a *Bivens* remedy unavailable as a matter of law.

Although the Supreme Court has not discussed the availability of a *Bivens* remedy in the context of the Medicare Act, it has refused to extend *Bivens* in the Social Security context. *Schweiker v. Chilicky*, 487 U.S. 412, 420 (1988). In *Chilicky*, the plaintiffs alleged that the defendants, including federal officials, had adopted illegal unconstitutional policies that resulted in the improper termination of their benefits. *Id.* at 418. Although the plaintiffs' benefits were eventually restored, including retroactive payments, they sought money damages for, *inter alia*,

---

[6]The Court notes that this statement is no longer true as Plaintiffs have admitted that their applications have been initially denied by CMS, such that the appeals process is now available to them. Pls.' Resp. Br. at n.2.

emotional distress and loss of food and shelter caused by the improper denial of benefits without due process. *Id.* at 419.

In rejecting *Bivens* in the Social Security context, the Supreme Court noted that "[t]he absence of statutory relief for a constitutional violation…does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation." *Id.* at 421-422. It further observed that:

> [T]he concept of 'special factors counselling [sic] hesitation in the absence of affirmative action by Congress' has proved to include an appropriate judicial deference to indications that congressional inaction has not been inadvertent. When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional Bivens remedies.

*Id.* The Court found that the Social Security Act made no provision for money damages against officials responsible for unconstitutional conduct, but could not be distinguished from other cases in which it had refused to extend *Bivens* even in the absence of complete relief for the plaintiff. *Id.* at 425 *referring to Bush v. Lucas*, 462 U.S. 367, 368 (1983). The Court agreed that although suffering months of delay in receiving income on which the plaintiffs depended could not be fully remedied by the "belated restoration of back benefits," Congress addressed the problems created by wrongful termination in the Social Security Act–an act which is extremely regimented and expansive–and its choice to not provide a remedy beyond restoration of benefits could not be legally revised by the Court. *Id.* at 429.

The scope and detail of the Medicare Act is similar to the Social Security Act interpreted in *Chilicky*. *See, e.g., Shalala v. Guernsey Memorial Hosp.*, 514 U.S. 87, 96 (1995) (reviewing the

Medicare Act's breadth and noting the regulations that "are comprehensive and intricate in detail" and an "elaborate adjudicative structure" for details not addressed by regulations). Plaintiffs here assert essentially the same claim as the plaintiffs in *Chilicky*. Plaintiffs allege that they are entitled to damages resulting from Defendants' unconstitutional delay and de facto denial of their applications to become Medicare providers. Although the *Chilicky* plaintiffs had their wrongfully terminated benefits reinstated and retroactively reimbursed, they still sought additional damages for the losses they incurred as a result of not being able to pay their bills while they had no benefits.

Similarly, Plaintiffs assert that they had to close because of the unconstitutional delay by Defendants in not timely processing their Medicare provider enrollment applications. Even assuming that Plaintiffs, whose applications have now been officially denied by CMS, appeal those denials and have their applications approved, they would only receive provider status and would not receive any additional damages to cover their loss of business during the time when their applications were wrongfully denied or delayed. While Plaintiffs would clearly not be made whole absent the additional damages, the Court finds this circumstance indistinguishable from *Chilicky*. Just as in the Social Security Act, Congress has set forth an expansive statutory and regulatory scheme to address problems–impliedly including constitutional violations–in the administration of the Medicare Act. The Court defers to that scheme, as it must, in finding no *Bivens* remedy given that Plaintiffs' alleged constitutional claims arise out of Defendants' acts, ultra vires or not, in administering the Medicare Act.

This holding is consistent with the Fifth Circuit's 2005 opinion in *Marsaw* in which the Court followed *Chilicky* stating that it "will not imply a *Bivens* remedy for an alleged constitutional violation in the denial of Medicare Act reimbursements, because Congress created a comprehensive statutory

administrative review mechanism, which was intended fully to address the problems created by the wrongful denial of Medicare reimbursements." *Marsaw v. Thompson*, 133 Fed. Appx. 946, 948 (5th Cir. 2005). *See also Giesse v. Sec'y of Dep't of Health and Human Servs.*, 522 F.3d 697, 707-708 (6th Cir. 2008) (finding no *Bivens* action in the Medicare context noting that even though a plaintiff would be deprived of complete relief in a situation where he had wrongly been denied benefits, the mechanism of the Medicare Act provided a remedy for wrongful denial); *Assar v. Crescent Counties Found. for Med. Care*, 13 F.3d 215, 218-219 (7th Cir. 1993) (finding that *Bivens* action for money damages for alleged due process violations by the defendant peer review organizations that affected the plaintiff doctor's participation in Medicare was unavailable, because the Medicare Act included a comprehensive scheme for review of those actions even if it did not provide a damages remedy); *Hilst v. Bowen*, 874 F.2d 725, 727-728 (10th Cir. 1989) (noting that even though the plaintiff doctor could not get consequential damages under the Medicare Act for alleged constitutional violations by the defendant in suspending him from the Medicare program, a *Bivens* remedy was not available given the existing remedies in the Medicare Act). Count Three therefore fails to state a claim as a matter of law.

<u>Viability of Count Four</u>

Plaintiffs' final substantive claim attempts to allege that Defendants violated section 1 of the Sherman Act by denying enrollment in Medicare to providers that have demonstrated an intention to transfer ownership to buyers. Compl. ¶ 94. Plaintiffs allege that this action constitutes an illegal restraint of trade. Compl. ¶ 95. Defendants respond that Plaintiffs have failed to properly plead an antitrust violation and that even if Plaintiffs' claim was proper, they are immune from liability.

A claim under section 1 of the Sherman Act requires proof of three elements: (1) the

defendants engaged in a conspiracy, (2) the conspiracy restrained trade, and (3) it occurred in a particular market. *Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Discount Ctrs., Inc.*, 200 F.3d 307, 312 (5th Cir. 2000). A plaintiff must also prove that it has suffered damages that are "'the type of loss that the claimed violations ...would be likely to cause.'" *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977) (citation omitted).

To prove a section 1 conspiracy, the plaintiff must establish that the defendants "had a conscious commitment to a common scheme designed to achieve an unlawful objective." *See Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984). To survive a 12(b)(6) motion, the complaint must contain plausible grounds to show entitlement to relief, not just "labels and conclusions". *Twombly*, 127 S. Ct. at 1959. "The requirement of allegations suggesting an agreement serves the practical purpose of preventing a plaintiff with "'a largely groundless claim' from 'tak[ing] up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value.'" *Id.* at 1959 *citing Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). "A general allegation of conspiracy... without a statement of the facts constituting the conspiracy, is a mere allegation of a legal conclusion and is inadequate of itself to state a cause of action. The pleader must allege the facts constituting the conspiracy, its object and accomplishment. *Larry R. George Sales Co. v. Cool Attic Corp.*, 587 F.2d 266, 273 (5th Cir. 1979) (citation omitted).

There are no allegations in the Complaint sufficient to plead a conspiracy by Defendants. The allegation that Defendants have a "clandestine policy" of denying provider enrollment comes up short. There are no facts alleging a conscious commitment to anything. There are no allegations of any interaction by Defendants that could arguably imply some common purpose among them with respect to Plaintiffs' provider applications. This is particularly highlighted by the complete absence

of any allegations referencing Defendants Leavitt, Weems, or Hughes in particular by name. The only reference to Defendant Farris by name merely alleges that he is withholding final decisions on Plaintiffs' applications. Compl. ¶ 73. There are simply no allegations that could be characterized as anything other than unsupported conclusions to support a conspiracy by Defendants.

Further, the Complaint fails to allege any facts identifying actions taken by Defendants that are outside the scope of their responsibilities in administering the Medicare program. Although Plaintiffs repeatedly argue that they are alleging that Defendants' acts are ultra vires, there are no allegations to support that argument. In support of their antitrust claim, Plaintiffs only allege that Defendants improperly delayed processing their applications and improperly denied those applications. Compl. ¶ 94. Decisions made about timing of processing and the evaluation of Medicare provider applications are indisputably exactly within the scope of Defendants' official duties.

The Supreme Court has held that the United States is immune from suit for alleged antitrust violations. *U.S. Postal Serv. v. Flamingo Indus. (USA) Ltd.*, 540 U.S. 736, 745 (2004). In *Flamingo*, the Court considered whether the defendant U.S. Postal Service should be considered a "person" separate and apart from the United States such that it would not be protected from antitrust claims in the same way the United States is.[7] *Id.* at 746. The court found that the Postal Service should be considered "as part of the Government of the United States, not a market participant separate

---

[7]Section One of the Sherman Act imposes liability on any "every person" who makes a "contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. §§ 1. Thus, the *Flamingo* court focused on whether the federal government was a "person" and whether the Postal Service should be considered part of the federal government (and therefore not a "person") for the purposes of the Act.

from it" based on many facts including (1) Congress established it as an independent establishment and not a private corporation, (2) it has different goals from private corporations, (3) it had powers characteristic of Government, and (4) its powers were limited by other governmental entities. *Id.* at 746-747. Similarly to *Flamingo*, the question for this Court is whether the entity Defendant Palmetto and the individual Defendants should be considered as part of the Government of the United States and not as separate "persons" for the purpose of evaluating immunity from the antitrust laws. The Court finds that they should be considered as part of the Government.

Defendants Palmetto and Hughes (Palmetto's president) are involved in the Medicare enrollment process only by way of the authority provided in 42 U.S.C. §1395kk-1, which allows CMS to contract with private entities to assist in the administration of the Medicare program. Palmetto, and all of its employees, including Hughes, are bound by the Medicare Act and all of the regulations and guidelines issued thereunder. *Id.* Essentially Palmetto stands in the shoes of CMS in assisting in processing Medicare provider enrollment applications.

In evaluating Defendants Palmetto and Hughes using the same criteria as the Supreme Court in *Flamingo*, it is clear that Defendants are not acting in any private capacities with respect to the Medicare Act. First, Palmetto and Hughes are only involved with the Medicare Act by way of authorization under the Medicare Act itself and contracts attendant thereto with CMS. Second, Palmetto and Hughes' goals are identical to the goals of the Government, as they are essentially employed to act instead of a direct Government employee. Third, Palmetto and Hughes have powers characteristic of the Government in that, for example, they are allowed to communicate with potential providers and make requests for information as though they were CMS. Fourth, Palmetto and Hughes' power with respect to the administration of the Medicare Act derives from CMS'

statutory authority and can be no greater than that.  Further, Plaintiffs' antitrust claim alleges an illegal restraint of trade based solely on Defendants' acts, or omissions, with respect to the administration of the Medicare Act.  There is simply nothing in the Complaint that relates to any private sector act or omission that would militate against finding Defendants Palmetto and Hughes to be part of the federal government for the purpose of immunity under the antitrust laws.  *See also Marsaw*, 133 Fed. Appx. at 949 (finding that plaintiff's claims arising from decisions to pay or deny benefits by the defendant private company acting under the direction of the federal government in performing duties delegated by HHS could not stand, as defendant was immune just as an employee of the United States performing discretionary duties would be).

Defendants Farris, Weems, and Leavitt are direct public employees of the federal government.  Defendants Farris and Weems are both employees of CMS–the sub-agency responsible for administering the Medicare Act.  Defendant Leavitt is the head of the agency of which CMS is a part.  For all of the reasons discussed with respect to Palmetto and Hughes, and even more so considering their identity with the Government, the remaining Defendants are also immune from liability under the antitrust laws.  *See also Sea-Land Serv., Inc. v. Alaska R.R.*, 659 F.2d 243, 246 (D.C. Cir. 1981) (holding that "the United States, its agencies, and officials, remain outside the reach of the Sherman Act").  Plaintiffs' conclusory allegations that they are alleging ultra vires acts of Defendants does not overcome this immunity in view of the complete dearth of allegations of any act by any Defendant outside the scope of their administration of the Medicare Act.  Because the Complaint fails to allege the necessary elements to prove a violation of Section One of the Sherman Act and further because allowing re-pleading could not overcome the immunity of Defendants, Count Four fails to state a claim upon which relief could be granted.

## CONCLUSION

For the reasons discussed above, Counts One and Two of the Complaint are dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Counts Three and Four are dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted. Counts Five and Six are requests for the remedies of a preliminary and a permanent injunction which, considering that all of the substantive counts have been dismissed, cannot stand independently and are therefore dismissed. Count Seven is a claim for declaratory relief that provides no specific request for a declaration and merely incorporates the foregoing paragraphs of the Complaint. Plaintiffs have ten (10) days, if they desire and are able, to amend Count Seven to include specificity sufficient to identify the declaration sought and how the declaration sought is not duplicative of the substance of the Counts already dismissed in this Order. All of the claims against all of the Defendants are hereby DISMISSED without prejudice. Plaintiffs' Motion for Class Certification (doc # 17) is DENIED as moot.

SO ORDERED.

Dated: November 7, 2008

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE